UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>WAYDE LYNN KURT,<br><br>　　　　　Defendant. | ) Case No.:  CR-10-114-WFN<br>) 　　　　　　　　CR-11-161-WFN<br>)<br>) DEFENDANT'S SENTENCING<br>) MEMORANDUM<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Defendant Wayde Kurt, by and through his attorney of record, Richard D. Wall, submits the following memorandum regarding issues relevant to sentencing.

BACKGROUND:

Mr. Kurt was convicted at trial of possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  At trial, Mr. Kurt presented an entrapment defense and testified on his own behalf.  Mr. Kurt did not deny having knowingly possessed firearms as alleged by the government.  Mr. Kurt testified extensively about the

SENTENCING MEMORANDUM        - 1 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

circumstances leading up to the commission of the offense and his decision to obtain firearms at the request of the Confidential Informant.  The Court declined to give Mr. Kurt's proposed entrapment instruction.

During his testimony at trial, Mr. Kurt acknowledged his distrust and dislike of the United States government.  He also acknowledged his practice of the Odinist religion and his adherence to the "Asatru" belief system, which **does not** include a beliefs in the supremacy of the white race.  Mr. Kurt denied having committed or having intended to commit any acts of violence against the United States or against any person and denied committing or intending to commit any acts of terrorism. Several witnesses who testified for the defense confirmed Mr. Kurt's character as a non-violent person and a person who neither believes in nor practices any form of racism.

The government has sought throughout these proceedings to portray Mr. Kurt as a "white supremacist" and a terrorist.  That portrayal is based entirely upon things Mr. Kurt said to David Usdeth and a video of Mr. Kurt taken at a meeting of the Valhalla Bound Skinheads ("VBS") during which Mr. Kurt stated that he had been working all his life toward the "final solution."  The statement made by Mr. Kurt at the VBS meeting was clearly intended to make others at the meeting believe that he shared their views and that he could be trusted by them.   The statement imitates the statements made by other at the meeting and gives the

SENTENCING MEMORANDUM      - 2 -

impression that Mr. Kurt is a believer in the white supremacist philosophy of the group, which is the impression Mr. Kurt intended to create in order to avoid any confrontation with others who were present at the meeting, such as Daniel Wilson, a/k/a "Church."   Mr. Kurt was unaware that he would be asked to make such a statement when he attended the meeting.

The statements made by Mr. Kurt to David Udseth were likewise fabrications intended to gain Mr. Udseth's confidence.  Many of the statements that the government contends evidence Mr. Kurt's involvement in racist and/or terrorist activities are demonstrably false.  The following statements made by Mr. Kurt to the Confidential Informant are examples of falsehoods fabricated by Mr. Kurt in order to gain Mr. Udseth's trust and confidence:

     1.    <u>Manufacture of a "Silencer":</u>

Mr. Kurt claimed that he had manufactured or was intending to manufacture a "silencer" by cutting slots in a metal tube of slightly larger diameter that the gun barrel to which it would be attached.   Mr. Kurt has extensive experience with firearms and was well aware at the time he made the statements that the object he described would not function as a silencer or suppressor.  The object described by Mr. Kurt is similar to a "muzzle brake" or "compensator," which is used to minimize movement of the barrel

SENTENCING MEMORANDUM    - 3 -

resulting from recoil, but has no impact on the amount of noise a firearm makes upon being fired.

2.    Travel to Canada:

Mr. Kurt told the Confidential Informant that he had injured his shoulder in a bicycle accident when returning from an illegal trip to Canada. As shown by Mr. Kurt's medical records, he actually injured his shoulder in a rock climbing accident that did not involve any travel to Canada.  The story about going to and from Canada was intended to make the Confidential Informant believe that Mr. Kurt was able to travel freely outside the United States without being detected by authorities.

3.    Molybdenum Coated Bullets:

Mr. Kurt claimed he could manufacture armor piercing bullets by spraying them with a "WD-40 like" lubricant that contained molybdenum. Mr. Kurt had in his possession a spray can of molybdenum based lubricant for use on machine parts.  Spraying that substance on a bullet would not create an armor piercing bullet or otherwise alter or modify the bullet in any significant way.  Mr. Kurt never attempted to create any type of armor piercing bullets by using that or any other method.

4.    Manufacture of Ammunition Using Loader:

Mr. Kurt told the CI that he had used a loader to make a large number

SENTENCING MEMORANDUM        - 4 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

of rounds of ammunition for both the .38 handgun and the Seiga rifle.  In fact, Mr. Kurt had only made only about 15 rounds of .38 ammunition and 10 rounds of 7.62 x .39 ammunition.  When law enforcement agents conducted a search of Mr. Kurt's residence and place of employment, they did not find any large quantity of ammunition.

The foregoing examples demonstrate that Mr. Kurt was attempting to convince David Udseth that he was actively engaged in preparation for some type of armed conflict, presumably with the United States government when in fact he was not engaged in any such activity.

At the time of Mr. Kurt's arrest, federal agents conducted an extensive search of his residence and place of employment.  The government did not find any evidence connecting Mr. Kurt with any white supremacist organizations or any terrorist organizations.  Nor did the government find any evidence that Mr. Kurt was engaged in any kind of terrorist activities or acts of violence.  The government has not produced, and cannot produce, any credible evidence that Mr. Kurt has ever belonged to any racists or terrorist groups or that he was engaged in any preparations for violent or terrorist acts.

The weight of the evidence to be presented at the sentencing hearing will establish that Mr. Kurt is not the person the government has portrayed him to be and that he has never engaged in any act of violence against the government or any

SENTENCING MEMORANDUM          - 5 -

person.  Although, Mr. Kurt is distrustful of the government and protective of his privacy, he does not believe in violence as a means to any end and does not believe in or practice any form of racism.

Those who have known Mr. Kurt on a personal basis describe him as friendly, respectful of others, trustworthy, hard working, and non-violent.  Unlike other members of the Vanguard Kindred, Mr. Kurt did not engage in acts of violence against non-whites or non-Christians.  In fact, of those members of the Vanguard Kindred who were present at the assault on Anthony Johnson, Mr. Kurt was the only one to intervene on Mr. Johnson's behalf.  While it is disputed whether Mr. Udseth was an active participant in the assault, it is clear that at a minimum he was willing to stand by and watch while Mr. Johnson was brutally assaulted by Keagan and Tuyle and Daniel Wilson.

At the time of the instant offense, Mr. Kurt was involved with a group called the "Intenders."  The purpose of the group was to encourage and assist its members in living a lifestyle rooted in positive thinking.  The group's beliefs were based upon a book called "The Secret," which had been promoted by Oprah Winfrey.  Neither the group nor the book it was based upon had anything whatsoever to do with racism or terrorism.  Mr. Kurt's involvement in such a group belies any attempt by the government to characterize him as a dangerous radical bent on violence against the United States.

SENTENCING MEMORANDUM        - 6 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

GUIDLINE SENTENCING RANGE:

<u>Felon in Possession of a Firearm</u>:

I.     <u>Base Offense Level</u>:

The PSR assigns a Base Offense Level of 20 to Mr. Kurt's offense under U.S.S.G. §2K2.1(a)(4)(B) based upon the claim that one of the firearms belonging to the Confidential Informant was "capable of accepting a large capacity magazine." PSR, para. 41. However, the PSR also notes that in order for §2K2.1(a)(4)(B) to apply, the firearm must have a large magazine attached to it or must be in close proximity to a large capacity magazine at the time of the offense. U.S.S.G. §2K2.1, comment (n. 2).

Mr. Kurt brought only two firearms to the shooting with the Confidential Informant, a Saiga 7.62 rifle and a .38 caliber revolver. Neither of those firearms was capable of accepting a large capacity magazine. The Confidential informant brought three firearms, including an AK-47 variant. However, there is no evidence that any of the firearms had a large capacity magazine attached to it or was near a large capacity magazine at the time of the offense. Therefore, U.S.S.G § 2K2.1(a)(4)(B) does not apply.

Mr. Kurt was a prohibited person at the time of the offense. The Base Offense Level for this offense is 14. U.S.S.G § 2K2.1(a)(6).

SENTENCING MEMORANDUM          - 7 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

II.     Adjustments to Base Offense Level:

In discussing the factual basis for adjustments to Mr. Kurt's Guideline Offense Level, the PSR repeatedly uses the word "appears" to suggest the existence of certain facts.  The use of that term indicates that the factual conclusions set forth in the PIR are based upon the subjective opinions of the author, rather than on objective evidence.  The PSR fails to inform the Court of the appropriate standard of proof or to apply the appropriate standard of proof with respect to any of the recommended adjustments to the base offense level.

In general, the evidentiary standard for fact finding by the District Court at sentencing is a preponderance of the evidence.  Guesses, even the "educated" kind, are not a sufficient basis for establishing facts for purposes of sentencing.  *See, United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir. 2010).  Moreover, any adjustment to the base offense level has an extremely disproportionate effect on the applicable guideline range, the underlying facts by a clear and convincing standard. *United States v. Staten*, 466 F.3d 708, 717 (9th Cir. 2006).

The PIR suggests that Mr. Kurt's base offense level should be increased by 12 levels under U.S.S.G. §3A1.4(a) because the offense involved or was intended to promote a federal crime of terrorism.  The application of that adjustment clearly has an extremely disproportionate effect on the applicable guideline range.

SENTENCING MEMORANDUM     - 8 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

Therefore, the underlying facts to sustain that adjustment must be proved by clear and convincing evidence.

*Specific Offense Characteristics*:

The PSR assigns a +4 enhancement to Mr. Kurt's Offense Level under U.S.S.G. §2K2.1(b)(6)(B) based upon the claim that he committed the instant offense "in connection with attempted domestic terrorism and/or attempted manufacture of a suppressor (silencer)." PSR ,para. 43. There is no evidence that Mr. Kurt manufactured or attempted to manufacture a firearm suppressor or silencer in connection with the instant offense.

As noted above, the item Mr. Kurt described to the Confidential Informant is not a suppressor or silencer and would not function as a suppressor or silencer. In addition, there is no evidence that Mr. Kurt ever attempted to commit any act of domestic terrorism.

Furthermore, U.S.S.G. §2K2.1(b)(6)(B) applies only when it is shown that the firearm was possessed in connection with "another felony offense." "Another felony offense" is defined as follows:

> "Another felony offense", for purposes of subsection (b)(6)(B) , means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained.

SENTENCING MEMORANDUM        - 9 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA 99201
(509) 747-5646

U.S.S.G. §2K2.1, comment (n. 14(C)).  Although the PSR suggests that the current offense was committed in connection with an act of "attempted domestic terrorism," the PSR fails to identify any conduct by Mr. Kurt that would qualify as "another felony offense" under the foregoing definition.  The enhancement clearly does not apply.

*Victim Related Adjustments*:

The PSR assigns a +12 enhancement to Mr. Kurt's offense level under based upon the assertion that Mr. Kurt "appears to have been preparing for the 'final resolution,' which also appears to involve a domestic terrorism act."  PSR, para. 44.  The PSR concludes that the enhancement is warranted under U.S.S.G. §3A1.4(a) because the offense involved or was intended to promote a federal crime of terrorism.

The phrase "federal crime of terrorism" is defined as follows:

"Federal Crime of Terrorism" Defined.—For purposes of this guideline, "federal crime of terrorism" has the meaning given that term in 18 U.S.C. § 2332b(g)(5).

U.S.S.G. §3A1.4, comment (n. 1).  The PSR does not identify any crime that qualifies under 18 U.S.C. § 2332(g)(5) that Mr. Kurt committed in connection with his possession of a firearm or that his possession of a firearm promoted in any manner.  The bare assertion that Mr. Kurt "appears" to have been preparing for

SENTENCING MEMORANDUM          - 10 -                Richard D. Wall
                                                    Attorney at Law
                                          221 W. Main Avenue, Suite 200
                                              Spokane, WA  99201
                                                (509) 747-5646

something called the "final resolution" that "appears" to involve domestic terrorism is insufficient to support the imposition of an enhancement under §3A1.4(a).  *See, United States v. Dowell*, 430 F.3d 1100 (10th Cir. 2005) (enhancement under §3A1.4(a) applies only where government can establish that the offense of conviction involved an offense that satisfies the definition of a federal crime of terrorism under 18 U.S.C. § 2332(g)(5)); *Unites States v. Morgan*, 942 F.2d 243, 245 (4th Cir. 1991)(District Court must make independent findings of fact and resolve all disputed factual matters necessary to support guideline calculation).

Even if the Court were to conclude that there is some evidence that Mr. Kurt attempted to commit a federal crime of terrorism, the standard of proof for applying a +12 enhancement in this case would be by clear and convincing evidence, rather than the usual standard of a preponderance of the evidence.  *See, United States v. Dare*, 425 F.3d 634, 641-42 (9th Cir. 2005).  The factors used to determine when the clear and convincing standard applies to a particular enhancement are (1) whether the enhancement falls outside the maximum sentence for the offense, (2) whether the enhancement negates the presumption of proof for the crime alleged in the indictment, (3) whether the facts offered in support of the enhancement create a new offense requiring separate punishment, (4) whether the increase in sentence is based on the extent of a conspiracy, (5) whether the increase

SENTENCING MEMORANDUM    - 11 -

is 4 levels or greater, and (6) whether the enhancement more than doubles the guideline range. *Id*., at 642.

Here, application of a +12 enhancement under §3A1.4(a) more than triples the guideline sentencing range and results in a guideline range sentence well in excess of the statutory maximum of 120 months. Thus, the clear and convincing standard of proof applies. The government has not produced evidence sufficient to meet even a preponderance of the evidence, let alone evidence sufficient to meet the clear and convincing standard.

*Obstruction of Justice*:

The PSR assigns a +2 enhancement to Mr. Kurt's offense level under U.S.S.G. §3C1.1 based upon the assertion that it "appears Mr. Kurt was attempting to witness tamper in regard to the CS who was a witness at trial. PSR, para. 46. In support of that assertion, the PSR relies on statements contained in a letter written by Mr. Kurt and addressed to "Sareena Maneesh."[1] In that letter, Mr. Kurt asks the recipient to inform "HAC" (Harold A. Covington) that David Udseth is working for the government as a confidential informant. It is clear from the context of the letter itself that the reason Mr. Kurt wanted to inform "HAC" of Mr. Udseth's

---

[1] "Sareena Maneesh" (a new-age musical group from Norway) is a pseudonym used by Mr. Kurt for Lynn Crawford, an acquaintance of Mr. Kurt's. During his testimony at trial, Mr. Kurt

SENTENCING MEMORANDUM        - 12 -

activities was to warn "HAC" to be careful in any dealings he might have with Mr. Udseth.  Nothing in the letter even suggests that Mr. Kurt was requesting that "HAC" or anyone else attempt in any way to influence Mr. Udseth's testimony or his willingness to testify against Mr. Kurt in the present case.

Mr. Kurt had two purposes in mind when writing the letter.  First, because he had initially made contact with Harold Covington's organization at the behest of David Udseth, Mr. Kurt felt an obligation to inform Mr. Covington that Mr. Udseth was working as a federal agent in case Mr. Udseth contacted Mr. Covington directly.  Second, Mr. Kurt was attempting to locate Anthony Johnson as a potential witness at trial.  Mr. Kurt hoped that the recipient of the letter would be able to contact Keagan Van Tuyle who Mr. Kurt believed might have information about Mr. Johnson's whereabouts.

Mr. Kurt's sole defense at trial was that he was entrapped by the government through the actions of Mr. Udseth.  At the time he wrote the letter, Mr. Kurt was well aware that the government had numerous tape recordings of conversations between him and Mr. Udseth and also had video of him and Mr. Udseth target shooting.  Mr. Udseth's testimony at trial was not critical the government's case. Mr. Kurt had little or nothing to gain by trying to influence Mr. Udseth's testimony

---

described Lynn Crawford as a "conspiracy theorist."  There is no evidence that Mr. Crawford is now or has ever been involved in any terrorist activities of any kind.

SENTENCING MEMORANDUM       - 13 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

or prevent Mr. Udseth from testifying at trial. In fact, Mr. Kurt's testimony at trial was, for the most part, consistent with Mr. Udseth's testimony.

In sum, there is simply no credible evidence that Mr. Kurt attempted to engage in any witness tampering with regard to Mr. Udseth. There is also no evidence that Mr. Kurt attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense or with respect to any other matter. An upward adjustment under U.S.S.G. §3C1.1 is not supported by the record and is not warranted in this case.

III.    Criminal History Category:

The PSR calculates Mr. Kurt's criminal history category at Category VI pursuant to U.S.S.G. §3A1.4(b). PSR, para. 129. As set forth in the PSR, paragraphs 56 – 128, Mr. Kurt has four prior convictions that count toward his criminal history score for a total of 12 points. However, Mr. Kurt's most recent conviction for Theft of Government property should not be counted for purposed of determining his criminal history category because the conviction is both constitutionally infirm and presumptively void.

A sentencing court may not rely on prior convictions that are "presumptively void" or are otherwise constitutionally infirm. *See, United States v. Tucker*, 404 U.S. 443, 449, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Burgett v. Texas*, 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). Although this rule has generally

SENTENCING MEMORANDUM        - 14 -

been applied only to convictions obtained in violation of the right to counsel, a conviction that is based upon facts that as a matter of law do not constitute a crime is likewise "presumptively invalid" and infirm under the due process clause of the United States Constitution. *See., e.g., Townsend v. Burke*, 334 U.S. 736, 740-41, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)(reversing on due process grounds a sentence based upon an earlier conviction that, in fact, had not occurred).

Here, the facts as set forth in the PSR as the basis for Mr. Kurt's conviction for Theft of Government Property clearly demonstrate that the alleged conduct does not constitute the crime for which Mr. Kurt was convicted. Mr. Kurt was alleged to have refused to return to government agents a GPS tracking device that the agents had surreptitiously placed on his vehicle without his knowledge or consent. Based on the facts as recited in the PSR, the government had abandoned the device as a matter of law by placing it on Mr. Kurt's vehicle. Therefore, Mr. Kurt could not have committed a theft by refusing to return it to the government.

Theft requires the wrongful taking of property from another person who has lawful possession of the property with the intent to deprive that person of the property. Property that has been abandoned cannot be stolen, since the taking of it is neither wrongful nor in contravention of any other person's right to it. That the property taken was abandoned prior to the taking is a complete defense to a prosecution for theft under 18 U.S.C. §641. *United States v. Shackelford*, 677 F.2d

SENTENCING MEMORANDUM        - 15 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

422, 425 (5th Cir. 1982) *citing, Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

Under the common law, abandonment requires a present intent to abandon and physical acts evidencing a clear intent to relinquish a property interest. *See, Avista Corp., Inc. v. Wolfe*, 549 F.3d 1239, 1248 (9th Cir. 2008). The essence of abandonment is the relinquishment of control or the right of control over the property. *See, United States v. Hall*, 549 F.3d 1033, 1039 (6th Cir. 2009) (conviction for theft of government property under 18 U.S.C. § 641 could be sustained only upon showing that government retained sufficient control of funds in the possession of third party such that the funds remained the property of the United States). The intent to abandon property is established by the acts of the owner and the reasonable inferences to be drawn from those acts. *Foss v. Culbertson*, 17 Wn.2d 610, 628, 136 P.2d 711 (1943).

Here, the government placed a tracking device on Mr. Kurt's vehicle without his knowledge and without his permission. By doing so, the government made the device part of Mr. Kurt's vehicle, the same as if the government had attached any other object to Mr. Kurt's vehicle without any agreement by Mr. Kurt that the government would retain some form of control over the object. Thus, the government voluntarily and intentionally relinquished actual control over the

SENTENCING MEMORANDUM      - 16 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA 99201
(509) 747-5646

tacking device to Mr. Kurt as the owner of the vehicle and the person having control of the vehicle.

Likewise, the government voluntarily and intentionally relinquished all legal right to ownership and control over the device when it attached the device to Mr. Kurt's vehicle.  The government knew that Mr. Kurt was the sole legal owner of the vehicle, which included ownership of any items permanently attached to the vehicle.  Thus, the government knew it was relinquishing any legal right of control over the device because it had no legal right to control Mr. Kurt's vehicle.

In fact, the purpose of putting the tracking device on Mr. Kurt's vehicle was to give him complete control over where it went, albeit without him knowing that it was there.  Only by giving control over the device to Mr. Kurt could the device perform its intended function of having Mr. Kurt unintentionally and unknowingly provide information to the government about his movements and whereabouts.

Under these circumstances, the government cannot reasonably contend that it did not intend to abandon the tracking device or that its actions did not evidence a clear intent to abandon the device.  This is not a case where property has been lost or mislaid.  See, e.g., *State v. Kealey*, 80 Wn.App. 162, 165, 907 P.2d 319 (1995)(distinguishing between property that is lost or mislaid from property that is abandoned).  Since the tracking device had as a matter of law been abandoned by the government, Mr. Kurt could not commit theft by taking the device off of his

SENTENCING MEMORANDUM      - 17 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

vehicle upon discovering it and could not commit theft by refusing to return it to the goernment.

Because Mr. Kurt's conviction for Theft of Government Property under 18 U.S.C. § 641 is invalid as a matter of law, the conviction was obtained in violation Mr. Kurt's right to due process and is constitutionally infirm. Thus, that conviction should not be considered by this court for purposes of determining Mr. Kurt's Criminal History Category. Not counting that conviction, Mr. Kurt's criminal history score is 9, and his Criminal History Category is IV.

Mr. Kurt was sentenced to a term of 18 months as a result of that conviction. He was also sentenced to a term of imprisonment for violating his supervised release conditions as a direct result of that conviction. Thus, Mr. Kurt has served approximately 3 years in prison on that particular charge, even though his actions did not constitute a crime.

IV.    Applicable Guideline Range:

Mr. Kurt testified at trial in great detail regarding his possession of firearms and the circumstances surrounding the offense conduct. Mr. Kurt denied the government's allegations only with respect to his motivation for possessing firearms at the request of the CI. Mr. Kurt has not attempted to blame the CI or anyone else for his actions, but instead has taken responsibility for the choices he made. The fact that Mr. Kurt presented an entrapment defense at trial does not

SENTENCING MEMORANDUM        - 18 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA 99201
(509) 747-5646

preclude this Court from granting a two-level reduction for acceptance of responsibility under U.S.S.G. §3E1.1(a).  *See, United States v. Molina*, 934 F.2s 1140, 1450-51 (9th Cir. 1991).

Mr. Kurt's testimony at trial demonstrates an affirmative acceptance of personal responsibility for conduct.  While Mr. Kurt believes that the conduct of the evidence in this case meets the legal definition of entrapment, he had not denied making the decision to obtain firearms and to possess firearms at the behest of the CI.  Under these circumstances,  Mr. Kurt is entitled to a 2-level reduction for acceptance of responsibility.

Mr. Kurt's Base Offense Level is 14.  A two-level reduction for acceptance of responsibility results in an adjusted offense level of 12.  Mr. Kurt's Criminal History Category is IV, which results in a Guideline Range of 21 – 27 months.

V.     Departures:

Mr. Kurt does not contend that any departure from a guideline sentence is applicable under Chapter 5, Part 5 of the Sentencing Guidelines.  However, the Court is free to impose a sentence below the applicable standard range based on the factors set forth in 18 U.S.C. § 3553.

VI.     18 U.S.C. § 3533(a):

18 U.S.C. § 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

SENTENCING MEMORANDUM          - 19 -          Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

paragraph (2) of this subsection." Paragraph (2), in turn directs the court to consider:

> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The factors to be considered by the court in determining a particular sentence are:

1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

2)    the kinds of sentences available;

3)    the kinds of sentences and sentencing range established by the United States Sentencing Guidelines;

4)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

5)    the need to provide restitution to any victims of the offense.

SENTENCING MEMORANDUM          - 20 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

18 U.S.C. § 3553(a)(1).

<u>History and Characteristics of the Defendant</u>:

The Court heard testimony at trial that establishes that, despite his distrust and animosity toward the government, Mr. Kurt is a person of good character. The testimony of Anthony Johnson and others shows that, at substantial risk to his own safety, Mr. Kurt intervened in a brutal assault on Mr. Johnson and, by doing so, may well have saved Mr. Johnson's life. Mr. Kurt refused to participate in or condone the violent and racist activities of the members of the Valhalla Bound Skinheads, whom he described to others as being very "bad and dangerous people."

Mr. Kurt was a trusted, hard working, and reliable employee of Lance Pounder Excavations for three years prior to his arrest. He was consistently respectful of all persons with whom he came into contact, regardless of their race, religion, color, or beliefs. At the time of his arrest, Mr. Kurt was an active member of the "Intenders" group, a social support group based upon a belief in the power of positive thinking and self-discipline and promoted by well known celebrities such as Oprah Winfrey. Mr. Kurt has no history of any violent offenses or of having engaged in any violent acts of any kind.

Apart from the statements made by Mr. Kurt during a meeting of the VBS and when speaking with the Confidential Informant, investigations into Mr. Kurt's

SENTENCING MEMORANDUM          - 21 -

activities by the FBI and other federal agencies have not revealed any evidence that Mr. Kurt actually made preparations for or planned to commit any acts of violence or terrorism.  Those investigations, although extensive, have also failed to reveal any evidence that Mr. Kurt ever conspired with any other person to commit such acts.

In sum, there is simply no evidence to support the government's claim that Mr. Kurt is a violent person bent on committing acts of terrorism.  Persons who have known Mr. Kurt describe him as a trustworthy, hardworking, and forthright individual, who does use violence or condone the use of violence for any purpose.

Nature and Circumstances of the Offense:

The Court is familiar with the nature and circumstances of the offense.  It is worth noting, however, that the government does not allege, and there is no evidence to support, any allegation that Mr. Kurt conspired to commit or attempted to commit any crimes other than the unlawful possession of firearms.  None of his statements to CI went beyond generalized discussions about "doing something" or preparing to do "something" with respect to the CI's expressed desire to establish a white supremacist organization in the Spokane area under the name "Northwest Front."  Mr. Kurt never engaged in any actual planning or preparation to help establish such an organization.  Nor did Mr. Kurt take any action to promote the goals of any such organization.

SENTENCING MEMORANDUM        - 22 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

Other Factors:

§ 3553 directs the court to consider the need to promote respect for the law and to provide just punishment for the offense when imposing sentence. 18 U.S.C. § 3553(a)(2)(A). The court is also directed to impose a sentence that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

Here, a standard range sentence of 21 – 27 months is more than sufficient to accomplish the purposes of sentencing in light of all the circumstances presented. Mr. Kurt possessed firearms knowing that he was a prohibited person. The firearms were used to go target shooting with the CI. There is no evidence that Mr. Kurt's possession of the firearms placed any person in danger. It appears from the evidence that the firearms were handled in an appropriately safe manner during transportation and target shooting. Even if this Court does not accept Mr. Kurt's explanation of the reason why he agreed to obtain firearms and engage in target shooting with the CI, it is  clear that Mr. Kurt's conduct in committing the instant offense was not unusual or atypical in light of the type of conduct usually associated with the such offenses.

UNLAWFUL PRODUCTION OF ID CARD AND FALSE STATEMENT:

Adjusted Offense Level:

Mr. Kurt is entitled to a decrease of two levels for acceptance of responsibility. Mr. Kurt entered a plea of guilty well before the scheduled trial

SENTENCING MEMORANDUM        - 23 -

date and there is no evidence whatsoever that obstructed justice or intended to obstruct justice.  Mr. Kurt's adjusted Offense Level should be 6.

CONCLUSION:

For the foregoing reasons, this Court should impose a sentence within the Guideline Range of 21 – 27 months for his conviction for Felon in Possession of a Firearm.  The court should follow the recommendation of the United States and impose a sentence of 12 months on the convictions for Unlawful Production of an Identification Card and Making a False Statement to run concurrently to each other and consecutively to any sentence imposed on the Felon in Possession of Firearm conviction.

Respectfully submitted this 24th day of April, 2012.

s/ Richard D. Wall
WSBA #16581
Attorney for Defendant
Richard D. Wall, P.S.
221 W. Main Avenue, Suite 200
Spokane, WA 99201
Telephone:  (509) 747-5646
Fax:  (509) 747-5692
E-mail:  rdwallps@comcast.net

SENTENCING MEMORANDUM         - 24 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646

CERTIFICATE OF SERVICE

I hereby certify that on 24th day of April, 2012, I electronically field the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:  Earl Hicks and Stephanie Van Marter, Assistant United States Attorneys.

A copy was also sent via legal messenger to Gloria Petretee, United States Probation Officer.

s/ Richard D. Wall, WSBA #16581
Attorney for Defendant
Richard D. Wall, P.S.
221 W. Main Avenue, Suite 200
Spokane, WA 99201
Telephone:  (509) 747-5646
Fax:  (509) 747-5692
E-mail:  rdwallps@comcast.net

SENTENCING MEMORANDUM          - 25 -

Richard D. Wall
Attorney at Law
221 W. Main Avenue, Suite 200
Spokane, WA  99201
(509) 747-5646